Manly, J.
 

 There was no -error on the trial of this case below, of which the appellant can justly complain. Of the instruction given in the alternative, that the father took possession of the negroes as his own, the appellee might have complained, for as the case is presented to us, there was no evidence upon which such instruction could have been based.
 

 The slaves went into the possession of the defendant’s intestate upon the execution of a deed, to his son, then a minor; and living-'with him, and the taking and holding of the same, should be .presumed to be in conformity with the right. In its origin., therefore, the possession of the intestate was a clear bailment, without evidence of any kind to the contrary. The Court below was entirely correct in the instruction ; that if possession were accepted, in the beginning, in the right of the son, it was a bailment which could not be terminated or converted into an adverse holding, by the fact proved, that intestate, through-a number of years, had used them as his own and called them his own; something more is necessary to convert a holding of the kind supposed, into an adverse one. It does not appear, indeed, that the calling them his own was in the presence of, or that it came to the knowledge of the son; and the use of them as his own was not inconsistent with a bailment. Therefore, there was nothing to put the ■ plaintiff on his guard, and excite him to demand a recognition of his rights. The only occasion when a question as to their respective rights in this property was made, was upon the exchange of one -of the slaves in 1850, when, instead of setting up a claim to them, the right of property in the plaintiff was distinctly recognized by the intestate.
 

 In the case of
 
 Martin
 
 v.
 
 Harden,
 
 2 Dev. and Bat. 504, it was held by this Court that a demand by the bailor and refu
 
 *61
 
 sal by the bailee, would operate to change the nature of the possession, and convert it into an adverse one. And in
 
 Powell
 
 v.
 
 Powell,
 
 1 Dev. and Bat. Eq. 379, where there had been a parol gift of slaves, the death of the donee, a division among the next of kin, and taking possession of the slaves in question, by one as his share, it was held that such possession, so taken, was adverse to the original donor; but in the case of
 
 Hill
 
 v.
 
 Hughes,
 
 1 Dev. and Bat. 336, although the bailee not only claimed and used the slaves as his own, but conveyed them by a deed of trust for the payment of his debts, yet, as the trustee did not take possession, but the bailee kept it as before, it was held the bailment was not determined. And so in the case of
 
 Collier
 
 v. Poe, 1 Dev. Eq. 55 ; where a slave was loaned in 1801, the death of the lender in 1807, an open claim during the life-time of the lender, by the defendant to hold them as his own right, and a continued possession under that claim until 1821; it was held,-the statute of limitations did not protect the defendant.
 

 The principles to be deduced from these cases are, that while an abortive attempt to regain possession, as by demand and refusal, or
 
 some aet
 
 by the bailee, changing the nature of his profession, as in the case of
 
 Powell
 
 v.
 
 Powell,
 
 will put the statute of limitations in action; yet, no length of possession under claim of title and use of the property as one’s own, wdll. In the case of
 
 Green
 
 v.
 
 Harris,
 
 3 Ired. 210; it-was held by this Court, that where it was manifest there was no purpose or wish, on the part of the bailor, then to resume possession, a mere naked declaration of right in himself by the bailee, allitough made in the presence of the bailor, unaccompanied by any
 
 aet
 
 upon the part of the former, changing the possession, would not set the statute of limitations into immediate action. This latter case is believed, indeed, to be fully sustained by the principle decided in the case of
 
 Hill
 
 v.
 
 Hughes.
 
 Something more than a mere claim of right, made known to the adverse party, is necessary.
 

 His Honor, therefore, in the instruction given in the case before us, was entirely within the principles of cases decided
 
 *62
 
 in this Court. Eor if the construction be put upon it, that intestate declared the slaves belonged to him in the presence of plaintiff, which is not the proper construction, yet the directions to the jury would be justified by-the cases of
 
 Hill
 
 v.
 
 Hughes
 
 and
 
 Green
 
 v.
 
 Harris.
 

 Upon' the facts of the case before us now, We hold that a bailment, established as it is by proof of the transaction, between the parties in 1850, the subsequent possession of defendant’s intestate until 1858, claiming the slaves in his own right and using them as his own, was not an adverse holding so as to make title in behalf of the intestate by iapse of time. There must be something more, as an effort on the part of the bailor to regain possession, or some act by the bailee changing the nature of his holding.
 

 Per Curiam,
 

 Judgment affirmed.